Good morning, Your Honors. Tim Sotelli on behalf of Mr. Salas, the appellant. You know, as I reflect on this case, I think it really boils down to the question of whether or not someone compelled into arbitration can, which is opposed and which they resist, can wait to the conclusion of that arbitration to appeal what they believe to be the erroneous order compelling the arbitration. There is one other issue. If they wait to the end, can they let then the court enter the arbitration award without challenging it? I believe so. I have not seen authority that imposes that requirement. I haven't seen any authority that would suggest if you don't challenge the entry of the arbitration award, then why is not your case moot? Well, Your Honor, I believe that in order to perfect an appeal of this nature, one has to wait for a judgment to be entered, and then the previous order compelling arbitration can be challenged on this direct appeal. So you're suggesting that in an arbitration where you don't like it going to arbitration, you can let the arbitration go along and do nothing, let the award come down, have a motion to then affirm the arbitration award in front of the court, that it be something that the court wants to enter or does enter, and you don't have to say anything there, but all you got to do is appeal the judgment? Well, here I think there is a factual distinction from the normal case. If one were to take exception to the factual findings of the decision of the arbitrator and want to challenge that, there may be a mechanism. But to simply have to re-challenge the court's earlier order before the trial court, I don't believe that step is necessary. Well, I worry about that, I guess, because when I make a motion in limine in a case, I can't just let the evidence come to the court and not challenge that evidence again when it's supposed to be let in, or it's as if I've waived my challenge altogether. When I have a case where I don't believe that somebody has done a good job, the court, in sending it to arbitration, it seems a little uneasy that I can sit on my heels and do nothing when the order to put in the judgment of the arbitrator comes and nobody does anything and then you just want to do the judgment. I'm trying to figure out how I can get to that. That seems to rely on the first issue. Is it moot? Because you don't challenge it. Well, I think, Your Honor, our position would be that it was initially challenged, and that was a sufficient challenge to preserve the appeal. The only thing you didn't challenge was the request to confirm the arbitrator's award. Is that correct? Yes. We did challenge the order to arbitrate. Why is the analogy to something like personal jurisdiction in which you're compelled into a forum you don't wish to litigate in? You simply acquiesce. Let's say a default judgment is entered against you and then brought to your home state to enforce against you, and your only defense to that is that the first court lacked personal jurisdiction over you, which is you haven't challenged the award on the merits because it was a default judgment, but you can challenge the jurisdiction of the court to issue it. Isn't that effectively what you're doing here? Yes. I think we are. I think, you know, the challenge was in the initial opposition to the motion to compel arbitration before the district court, and that challenge preserved the right to appeal at the conclusion of the case. But, sir, what I don't—what's troubling me is what was the thinking behind doing nothing to contest the petition for confirmation at the district court. It really is extraordinary, it seems to me, when the law firm did absolutely nothing. For purposes of this discussion, yes, you had to wait for a judgment, a final judgment that could be appealed, or you certainly could appeal, for purposes of this discussion, the final judgment. But I fail to understand the thinking behind the law firm not contesting essentially anything else up to that point. Well, Your Honor, the—I believe the thinking was that, you know, had the arbitrator made findings that were later to be challenged on appeal, then that type of challenge might have been made to the confirmation. But we saw the confirmation of the award as simply a—essentially a ministerial act that was—it was not appropriate to contest because our appeal was to be predicated on the erroneous order compelling into arbitration, which had already been decided by the district court judge. But it really isn't ministerial. There is no judgment. There is nothing to confirm. There is nothing in the judgment against you, except when you go against the very enactment of what the arbitrator does. That's the whole of it. That's why I wanted you to think about that. That's the worry I have on moot. Well, another reason, Your Honor, that comes to mind is that the arbitrator didn't make findings or make any decisions relating to the order compelling arbitration to whether it was properly in arbitration. That was really the province of the district judge. And so— You just didn't—you decided just not to fight this thing at the arbitration at all. I mean, you're—the only thing you really wanted to argue was the referral. Yeah, in this posture—no, no— Your whole case sort of rises and falls on whether the district court properly referred this to arbitration. Yes. If we decide that the referral was appropriate, then you lose the case. I think that's true. Now, the original intent was obviously to litigate the arbitration. And that's the reason for the delay, without, you know, getting into the factual weeds here, because I don't think it's directly relevant to the decision of this Court, and the standard is different. But the reason for the long delay was the back-and-forth with opposing counsel to try to craft some kind of procedural mechanisms so that the arbitration could even be conducted, because the CBA that was being enforced and directed into arbitration was so bereft of any procedural mechanism, it did not even allow for the awarding of damages. And that discussion took more than one year? Is that what you're saying? Yes. It was a very long, tortured back-and-forth, which I think is reflected in the record. And that is what engendered these delays. It was never the intention of the plaintiff's counsel to abandon prosecution of the arbitration, but they were forced to take a lot more time than would ordinarily be the case because of having to hammer out all these procedural requirements. But isn't that effectively what you've done, that is, abandon the prosecution of the arbitration? The cold record, and I go back to my earlier point, the cold record reflects a troubling lassitude on behalf of the firm, or on behalf of Salas. There were efforts, and one of the difficulties was the contention between counsel over issues such as how would the arbitration be paid for. You know, under the controlling law in California, Armendariz, the employer must pay for such an arbitration, a binding arbitration. Here the employer was resisting that, and ultimately it was decided that they would split the cost of the arbitration, which is incredibly burdensome on a plaintiff in a That's just one of the many fights that occurred, but that's what underlied the delay. But we're here really to contest the order compelling arbitration. We think it was erroneous. We think it was in violation of the controlling law as enunciated by the Supreme Court in the Pyatt case. If I were to disagree with you as to that, can I really say that the arbitration provision in the CBA is unconscionable under Armendariz? Yes. How can I do that? It doesn't seem to me that California law is very clear on whether the would be applicable to these arbitration provisions. Well, all the various elements discussed in Armendariz, which I'm sure the Court is aware of, the requirement for a written decision, the requirement that the employer pay for the arbitration, the requirement that there be some minimal discovery allowed, the requirement that the statute of limitation track that which would be allowed under the normative statutes. Here there's an abbreviated one-week statute of limitation. All of these things make it unconscionable under Armendariz, in our view. Those are the major provisions you would suggest? Those are, yeah, those that come to mind. The rest are delineated in our brief, Your Honor. All right. Why don't you tell us why you think that the CBA doesn't require you to arbitrate this? Well, we don't think that there was a clear and unmistakable intent to end in a judicial forum for an individual in a civil rights case, in a statutory employment case such as this nature. And we agree with the pithy analysis of the other Ninth Circuit panel that analyzed this very same CBA provision in the Powell case, which we have cited to the court. It's an unpublished case. Let's take a look at the paragraph on, well, it's ER 81. It's page 58 of the CBA. It's a 38.1-second paragraph. So this looks like this gives, was the union a party here? Yes. So the union is the party that gave up the right to arbitrate? It's not Salas personally? The union on behalf of Salas? Yes. But we don't believe they intended to give up, well, the right to access to the courts for the individual. So we think that on... Right. But Salas didn't get to, Salas wasn't, was Salas an actual party to the arbitration? Yes. Or only Salas as represented by the union? No, it was Salas. And the union wouldn't participate, refused to participate. The union refused to participate in this? Yes. And so the provision of the CBA says, the union may challenge the employer's decision through the grievance and arbitration procedure of this agreement? Yes. It doesn't say anything about the employee? Correct. Correct. I mean, there was no provision for an employee to abandon his right to go to court on a statutory employment case. It was simply... But the union refused to participate in the arbitration? Yes. Why? Why? Because they felt there was no basis that the contract didn't provide, didn't allow for them to do so. I mean, it's just, it was, there's a declaration... Because they didn't believe in Salas's claim? No, I don't believe that's the case. They just felt that they didn't have the contractual right to bring an individual claim of this nature. The CBA allows the union to grieve a situation where the company attempts to accommodate a disability, and if it were to, in so crafting that accommodation, violate seniority rights or bumping rights, something of that nature in the CBA, then and only then did the union have the ability to grieve that. So the union is looking for maybe broader interests that the union might have, or that its other employees might have, as opposed to a single employee? I think that they were just felt, they felt limited by the contract. They didn't feel that they were authorized to do this. They didn't feel they were... Well, didn't, didn't... I'm sorry, sir. Go ahead. There is a declaration that's provided by the attorney who negotiated the contract for the union that's in the record. And in it, this gentleman, Attorney Kaplan, indicates that there were no proposals during the negotiation for either the CBA to include statutory employment discrimination and other related employment claims in the grievance and arbitration procedure of the CBA that would be, that would belong to individuals. So... But here, Salas did not file a grievance. And if he didn't file a grievance, then there's no role for the union. Isn't that what happened? That's correct. There's no, there's no grievance that I'm aware of that Salas filed. He... And if there's no, if there's no grievance, then that doesn't have the union participating in anything. Am I wrong about that or right? I think you're right. That, that would be one layer of the analysis, but also they, they didn't feel they could involve themselves in this individual statutory claim. But the paragraph here in the CBA... How do we know that? How do we know that, sir? I, I believe that's reflected in the, the declaration of Attorney Kaplan. All right. Thank you. So the, but the paragraph of the CBA that we talked about, 38.1, just simply doesn't address what happens if the, if the union doesn't, doesn't, doesn't want to, to litigate this, doesn't want to arbitrate this. And if your client doesn't file a grievance with the union, the union doesn't have, doesn't really have much of an interest here. Well, I, I don't believe the union ever even contemplated that they would be put in the position of representing anything. I mean, my, my point is, and I'm certainly going to ask counsel for Anheuser-Busch, is, you know, why does this, why do we think this paragraph is even applicable at all? It doesn't mention employees anyplace. Right. It's purely between the union and the, and the company. It's not, it doesn't... That would suggest that unless the union decided to arbitrate this on behalf of a, of an individual employee, in which it appears that perhaps only the employee had an, had an interest, there, there wasn't anything, there weren't, there were no other consequences to other employees of the union. So there's no, there's no, it doesn't have an impact on, let's say, seniority rights that you mentioned. Then unless, if the union doesn't, doesn't have a particular interest in arbitrating this matter, that the employee has no recourse. Correct. And it's not even clear that the employee has the right to arbitrate. Well, for sure not, because there's no provision at all for it. I mean, it's not even clear that if the employee came forward and said, gee, I want to invoke my arbitration rights, that Anheuser-Busch wouldn't be able to come forward and say, 38.1 says nothing about you being able to compel us to arbitration. Yes. And, and in fact, as the Ninth Circuit pointed out in the Powell case, Section 41 of the, the same CBA provision, speaks not at all to the right of the individual employee to litigate a fee hawk claim against the employer. So unless there are other questions from the panel, I would like to reserve a minute or two. I'll give you a minute. You're over your time, but I will allow you a minute. Thank you, Your Honors. Okay. Good morning, Your Honors. My name is Sherry Suica. I'm here on behalf of Anheuser-Busch. May it please the Court, I want to address Mr. Soteli's point that he claims, or he contends, that nothing that happened after the district court's order compelling arbitration matters, and we disagree with that point. And that's exactly what distinguishes this case from Mr. Powell's case. In addition to the post-dispute agreements that the parties entered into eliminating whatever procedural issues or deficiencies supposedly the CBA had, there is a public policy under the FAA. Here, Mr. Salas was ordered into arbitration, and he has an obligation to comply with that and then challenge the result. So why is this effectively a default judgment? Excuse me? It's a default judgment. You won. You won the default judgment. And now you have to go back and you have to litigate the question as to whether it could be referred there in the first place. Mr. Salas says, if I have to go to arbitration, I don't have the time, I don't have the money, I don't have the wherewithal, for whatever reasons, says, I just think the district court was wrong on that point, and I'm willing to take my risks on that. And if I'm wrong, I'm done. But I don't wish to litigate this in front of the arbitrator. The arbitrator says, fine. He issues the equivalent of a default judgment. And why isn't this now properly before the court on the question as to whether the initial referral to the arbitration by the district court was a valid order? Well, two points. Because, first, there's a public policy reason behind why an order compelling arbitration isn't immediately appealable and why one denying arbitration is. And there's a process that the parties are supposed to do. Roberts. So, right. So he did not have the right to challenge to bring in and bring the interlocutory appeal here to seek review of the district court's order to arbitration. Does that mean that it's unreviewable, or does it mean that it's reviewable  Under other circumstances, I would say it would be reviewable now. But here, he entered into post-dispute agreements, which eliminated all of the reasons that he claims the order was erroneous in the first place. Well, he didn't want to be in arbitration. And then he didn't raise that issue to the arbitrator. Would he? I don't think that's the arbitrator's business. Why is that the arbitrator's business? Does the arbitrator have the right to determine whether he has to be in arbitration or not? I thought that's what the district court had decided. Correct. Well, there was a change with the Powell case. That could have been raised with the district court or the arbitrator, and neither was done here. And instead, what Mr. Salastat did was just sit around and wait. He didn't move to — He didn't move to what? He didn't move to have the order reconsidered. He didn't raise that before the arbitrator. He didn't — Did the arbitrator have any jurisdiction? I mean, the district court is the one who determined whether he went over there or not. The arbitrator had no jurisdiction to determine that. The bottom line is, it seems to me that your arguments about what he did or didn't do in front of the arbitrator are a little bit uneasy. I'm wondering why you just didn't say anything about he never challenged having the arbitration award entered. You didn't even say that. I read all three of your briefs. It's not there. Oh, yes, sure it is. Where? Well, you can look at it later. It's not there. I looked for it. I think it's waived if you don't say it. So I was at that point. I mean, the bottom line is, there is a time when he has to challenge. He did make the right challenge when he was going over there. The question is, does he need to challenge it again when somebody moves to confirm the award? Nobody challenged that in your brief, but if that is, that might be a moot issue. That's why I asked him the question. But he is challenging the judgment, right? He is, yes. And, therefore, if he can make the challenge saying, I don't want to go to arbitration, get whatever award you want over there, and I'm challenging the judgment you get from that, I'm having trouble why that's moot unless he's got to challenge the confirmation of the award. He does. I do believe it is in our brief that he didn't raise any challenge. He didn't move to vacate the dismissal, the arbitrator's dismissal. We raised that in the brief. And he didn't oppose our motion to confirm it. And I believe the way that we phrased it in the brief is that he waived the issue bringing it to this court because he didn't challenge it. And so that I do. What are you going to do with the California cases that I had to research because they weren't any place that say it doesn't matter whether he challenges it or not? The California cases? Well, we're under the FAA. I understand, but we're also doing a California case. Well, with respect to that, my answer is that we have to look at the overall policy under the FAA because I think it would be a different situation if he did just go to the arbitrator and say, look, I don't want to participate in the process and dismiss my case so I could move on to appeal the initial order. What happened was he strung it along for three years and participated in the process then didn't participate in the process and then did and then didn't and dragged it out three years. And that delay he attributes to the deficiencies in the CBA, but that's not entirely correct. Even once the parties reach a stipulation to agree on those procedures, he waited a year and three months to even contact the arbitrator to start the proceedings. And considering that there was a court order here to participate in arbitration under the FAA, is that the public policy to let a party basically blow off the proceedings, ignore them, and not participate in good faith? Let's suppose he hadn't blown off the proceedings. Let's suppose that he fought with you sort of fair and square all along the way, trying to get procedures that would benefit him in the way that an arbitrator was selected and the procedures that would be used and whether discovery was available and so forth. You have a full-blown arbitration lasting days or weeks, let's suppose, that imposes an enormous cost on both sides. The arbitrator comes out with a decision against him. And Houser Bush then takes it to the district court, asks for confirmation. He fights it there on the ways in which the FAA allows you to challenge an arbitrator's decision on the merits. At what point can he challenge, can he say, you never should have sent me to arbitration in the first place? I protested that when I had the opportunity. I've raised it. I didn't waive it. Now, can he still raise the you never should have sent me to arbitration argument now? Yes. Okay. But he would have imposed a lot more costs on you. And here he is. He's taken the equivalent of a default judgment. And now you want to say, well, because he didn't impose all these costs on us, he doesn't get to raise this point. Right. I understand what you're saying on that end of the public policy. But there's one thing about the costs. But there's also the case is going to play out the same in court. I mean, you have a different decisionmaker. But the facts are the facts. Either the law was violated or it wasn't. And that public policy to make the person participate in good faith, at least the parties could see how that case is going to play out. Why do you care here whether he participated in good faith when you won? I mean, do you feel better? Do you have to go back to your client and say, I've got good news and bad news. We won, but we didn't win because he fought us. He just rolled over and died. Right. I don't think Anheuser-Busch is really going to care very much as to whether he fought you on the merits or didn't in an arbitration, right, as long as they win. Well, right. And then the point is to keep winning, though. And so now we're here in court. He only wants to make he doesn't want to spend your time and your precious money on anything and your client's money on anything else except for one point, that he shouldn't have been referred to arbitration in the first place. The district judge read the CBA wrong. Now, why isn't this the appropriate time for raising that argument? Because it's seven years later. When should he have raised it? He should have participated and then raised it at the appropriate time. He should have challenged the decision. What's the appropriate time? That's what I'm asking. Where is the appropriate time for him to raise it? He protested it in the district court. When the district court said, you've got to go to arbitration, he says, I don't want to go to arbitration. The district court says, you're going anyway. Now, where else should he have raised it? He didn't have a right to an interlocutory appeal. You've already told us that. Correct. Okay. Is he supposed to tell the arbitrator that the arbitrator doesn't have jurisdiction to do this? And the arbitrator can decide to overrule what the district judge has said? I certainly thought he could have raised it once the Powell decision was issued. He didn't. He didn't raise it there. He didn't raise it in the district court. Well, at what point did the district court issue the order to send it to arbitration? Wasn't that 2010? That's the first order that I see. Maybe there's another order, but that's the one that I see. It was February 3, 2010. Okay. And Powell was issued November of 2011. So he couldn't have raised Powell. He couldn't have? If I'm looking at the correct Powell, Powell v. Anheuser-Busch? It filed on November 3, 2011. Yes. That's after the district court's referral to arbitration. Yes, and I think that would have been a valid motion for reconsideration at that time. Okay. And because he didn't file a motion for reconsideration, has he waived the argument? He hasn't waived it. He's mooted it. Why has he mooted it? He's mooted it because of the way he handled the situation. He entered into stipulations basically eliminating the problems he had with the CBA in the first place and then strung that process along for years. Young lady, that's suggesting that if he loses the arbitration, if he goes over and does anything to make the arbitration go forward, that he's, in fact, mooting his argument. That's what you're arguing. Which it seems to me then everybody's going to be like him. They're going to say, I'm not going over there. Because if I go over there, at that point I moot and I want not to go. It seems to me there has to be a time when he can say, and the problem is he can't raise it to me, and so that I think is Judge Bybee's questioning. Where do you do it? My only idea was maybe when they confirm the award. But California's not going to allow that, and I'm trying to figure out if that's what I apply. So there we are. I would like you, if you tell me why the district court didn't err in compelling the arbitration. Because the case law says that if the statute is specifically mentioned in the CBA and that the causes of action are specifically mentioned, that's a clear and unmistakable waiver. Did you hear Judge Bybee's questions to counsel about the provisions that don't even talk about the employee at all? No. There's nothing suggesting the employees got to arbitrate at all. The union may. How do I interpret that to say clearly and unmistakably? Well, the union, there are two points to that. First, the union could have participated. We don't know because he never submitted the grievance. Was he obligated to submit the grievance? Yes, if under the CBA. Where does it say that? Because his disability claims, which is what he raises, are mentioned in the CBA. And that this, any violation of the CBA is a cause for a grievance. He was obligated to submit one. Now, under these circumstances, what we did was we said, look, you didn't submit your grievance to the union, but there was an individual arbitration. Well, we tried to have one, and he didn't participate in that process. It wasn't the mechanisms that prevented him from pursuing the claim. It was him. If we think his challenge to the referral to the arbitration is properly before this court, properly and timely before this court, and we decide that Powell-Furr is correct, then you're going to lose this one, aren't you? Correct. Shouldn't we be in some way applauding his largely consistent position that he should never have been in arbitration and waited until a final judgment was entered? Isn't in some way that the cleanest, most pristine approach for Salas to have taken? No, because if he had done that, we would have, this whole process would have been years ago. Now we're seven, yeah, this was in 2009 he raised his claim. We're now in 2016. Where are the witnesses? What are their memories? But he waited for the final judgment before appealing and raising the issue of it never should have been sent to arbitration. I take it it's nothing on his shoulders, the period of time the arbitration took. He didn't want to be in arbitration. He had nothing to do with it, and he's been consistent, but for the procedural wrangling that we've been talking about, and I'm unaware of any line of cases in California, as there is, in fact, in New York state law, that you waive certain rights if you participate in the arbitration. I don't see that, but he wasn't participating in it in any way, but for the procedural stipulations you were talking about. So why shouldn't, as it were, he get a medal for having a consistent position of, I shouldn't be in arbitration. As soon as I get a final judgment, I'm going to raise that. Well, I think there has to be some public policy here in the way that the statute, the FAA, is written, because what if the judgment was entered five years from now, ten years from now? Procedurally, technically, he waits until after the judgment. Yes, I agree, that would be the time to raise it, but there has to be some consideration for him sitting on his rights and not being interested in pursuing the actual claims themselves in any forum. And I'd go back half a step. You're sure the FAA is applicable here, I take it? Yes, I mean, the arbitration was compelled pursuant to 14 Penn Plaza v. Pyatt under the FAA and the CBA. Thank you. And that reminds me of another point that I wanted to go back to, with Judge Smith referencing California law versus Federal law, and that these were California claims, and I agree that the substantive law of California would apply, but the procedural law of the FAA is what applies here, not the California claims. But the FAA, the only trouble I had was in trying to find in the FAA some substance as to when he had to challenge this, I could find nothing about he had to challenge at the time of the confirmation of the award. And I can find nothing anyplace. So that says he doesn't have to. So, again, then I'm here on judgment. That's why I referenced California. Thank you, Ms. Wieck, and we've taken quite a bit of your time. In fact, more time than we allowed you, but thank you very much. Thank you.  Thank you. Well, I simply would point out that, you know, there's no authority that requires a litigant to keep pestering the district court with motions for reconsideration and so forth in a manner of this nature. And we believe that it was appropriate to wait for final judgment and an appeal of what the plaintiff believes is the erroneous order into arbitration. Thank you very much. We thank both counsel for the argument. Solace v. Unhauser-Busch is submitted.
judges: Bybee, N.R. Smith, Stein